IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALTON CANNON,<br>a/k/a Sharif Mozaar Mustafa El:Bey, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. No. 11-1257-GMS |
| STATE OF DELAWARE, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Alton Cannon, also known as Sharif Mozaar Mustafa El:Bey ("Cannon"),

filed a complaint on December 19, 2011 alleging defamation, slander, and libel. The civil cover

sheet asserts jurisdiction by reason of a federal question and by reason of diversity of citizenship

of the parties. (D.I. 2.) Cannon resides in Wilmington, Delaware and is a frequent filer in this

court. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. For the

reasons discussed below, the court will dismiss all claims against the State of Delaware, the

Delaware State Police, Richard R. Cooch, Joseph R. Biden, III, and Robert Coupe, as well as

Counts 4, 5, 6, 8, 10, 11, 12, and 13 as frivolous and for failure to state a claim pursuant to 28

U.S.C. § 1915(e)(2)(B). The court will give Cannon leave to amend.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In the instant complaint, Cannon refers to the United States Constitution, the Delaware

Constitution, federal civil and criminal statutes, Delaware civil statutes laws, international laws,

treaties, conventions, and declarations. The civil cover sheet describes the instant action as a

cause of action pursuant to 28 U.S.C. § 1331 for defamation, slander, and libel.[1] It states that

jurisdiction rests pursuant to 28 U.S.C. § 1332 by reason of diversity of citizenship. In reading

the complaint, it appears that Cannon raises some claims pursuant to 42 U.S.C. § 1983.[2] The

complaint contains thirteen counts and names as defendants the State of Delaware ("State of

Delaware"), Delaware Superior Court Judge Richard R. Cooch ("Judge Cooch"), Attorney

General of the State of Delaware "Beau" Joseph R. Biden, III ("Biden"), City of Wilmington

Police Department ("Wilmington Police Department"); Wilmington Police Department Chief of

Police Michael J. Szczerba ("Szczerba"); Wilmington Mayor James M. Baker (" Baker");

Superintendent of the Delaware State Police Robert Coupe ("Coupe"); The News Journal

editorial page editor John Sweeney ("Sweeney"); WILM News Radio 1450 ("Radio 1450"); GPS

Provider/Contractor ("GPS Provider"); Governor of the State of Delaware Jack Markell

("Markell"); and The News Journal ("News Journal").

On September 29, 1998, Cannon entered a plea of guilty to charges of Assault Second

Degree and Unlawful Sexual Contact First Degree (as a lesser included offense of Unlawful

Sexual Contact First Degree). *See State v. Cannon*, 1999 WL 1441997, at *1 (Del. Super. Ct.

Dec. 9, 1999). Pursuant to the plea agreement, then pending charges of Unlawful Sexual

Intercourse First Degree[3] and Kidnaping First Degree were nolle prossed. *Id.* On December 4,

---

[1]Section 1331 provides for this court's jurisdiction by reason of a federal question.

[2]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

[3]Former 11 Del. C. § 775, Unlawful Sexual Intercourse First Degree was repealed by 71 Del. Laws, c. 285, § 13. The current law, 11 Del. C. § 773, is now entitled "Rape in the First Degree" and is a class A felony. *See Trump v. State*, 753 A.2d 963, 974 n.51 (Del. 2000); *State*

1998, Cannon was sentenced to ten years of Level V suspended after five years for three years at

Level IV suspended after one year for four years at Level II.  In April 2001, an administrative

warrant was issued, a violation of probation ("VOP") hearing was held on April 17, 2002, and

Cannon was found to have committed a VOP. *Cannon v. State*, 813 A.2d 1140 (Del. 2002)

(table decision).  His probation in connection with his assault conviction was revoked and his

remaining sentence of three years incarceration at Level V was reimposed. *Id.* Cannon served

the remainder of his sentence.  He was discharged from probation in December 2006. *In re*

*Cannon*, 984 A.2d 123 (Del. 2009) (table decision).  The allegations in the instant complaint are

related to Cannon's conviction on the offense of Unlawful Sexual Contact in the First Degree

and the requirement that he register as a sex offender pursuant to 11 Del. C. § 4120.  He raises

the following claims:

**Count 1, Defamation of Character.**  Count 1 is a claim based upon Delaware law

against the Wilmington Police Department, Sweeney, the News Journal, and Radio 1450.

Cannon alleges that on January 7, 2010, an unknown spokesman for the Wilmington Police

Department "initiated oral statements" to the News Journal and Radio 1450 that Cannon is a

convicted, high risk sex offender who failed to verify his registration information.  On either

January 9 or 10, 2010, the News Journal and Sweeney placed Cannon's photograph in the News

Journal next to  an article that he had failed to verify his registration information.  The article is

as follows:

> Sex Offender Sought:  The public is being asked to help find a convicted, high
> risk sex offender who failed to verify his registration information.  Alton Cannon,
> 56, whose last known address was in the 200 block of W. 21st St., was convicted

*v. Ortiz*, 2002 WL 337989, at *1 n.1 (Del. Super. Ct. Feb. 28, 2002).

in 1998 on three counts of unlawful sexual intercourse and kidnapping and assaulting a 56-year-old woman. Call police at 654-5151 of 576-3606 with information.

(D.I. 2, ex.) As discussed above, Cannon was convicted of Assault Second Degree and Unlawful Sexual Contact First Degree; not three counts of Unlawful Sexual Intercourse and Kidnapping. Apparently, Radio 1450 broadcast the same information. Cannon alleges that the foregoing defendants intentionally slandered and defamed him and placed his reputation in a false light.[4] (D.I. 2 at 10-16.)

**Count 2, False Light.** Count 2 is a claim based upon Delaware law against the News Journal and Radio 1450. Cannon alleges that on January 9, 2010, these defendants published and broadcast false information about him, as set forth in Count 1, without verifying the truthfulness and accuracy of the charges. (*Id.* at 21-23.)

**Count 3, Invasion of Privacy.** Count 3 is a claim based upon Delaware law against Wilmington Police Department, Szczerba, Baker, the News Journal, and Radio 1450. Cannon alleges that on January 9, 2010, the Wilmington Police Department released private information to the News Journal and Radio 1450 regarding Cannon's criminal history as discussed above in Count 1. The complaint alleges that the information is not for public disclosure, but the News Journal and Radio 1450, nonetheless, published and broadcast the information. In addition, the News Journal and Radio used Cannon's photograph without his permission or consent. The

---

[4]Counts 1 through 13 allege that the defendants' acts resulted in the deprivation of Cannon's liberty and violated his "fundamental substantive federal equal protection and procedural due process rights and grand common rights" under the First, Fourth, Fifth, Six, Seventh, Ninth, Tenth, Eleventh, and Thirteenth Amendments of the United States Constitution, amounting to cruel and unusual punishment in violation of the Eighth Amendment.

4

complaint alleges that Szczerba and Baker gave direct orders to their subordinates to publicize Cannon's life in a false light in the newspaper and on the radio. (*Id.* at 32-35.)

**Count 4, Wanton Negligence in Issuance of Arrest Warrant.** Count 4 appears to be a § 1983 claim against State defendants and City of Wilmington defendants. It alleges that on January 9, 2010, unnamed State defendants notified unnamed City of Wilmington defendants that Cannon had committed a crime by failing to verify his identity and address at Delaware State Police Troop #2 headquarters in Newark, Delaware.[5] Cannon alleges that unnamed City of Wilmington defendants issued a bench warrant for Cannon's arrest and then executed the warrant, without probable cause. (*Id.* at 40-42.)

**Count 5, False Arrest.** Count 5 is a § 1983 claim somewhat duplicative of Count 4. It is raised against Wilmington Police Department and alleges that on January 10, 2010, the Wilmington Police Department executed a bench warrant for Cannon's arrest that failed to state the place, person, or things to be searched, failed to place him on proper notice of an offense, and the nature and cause of the accusations against him that supported a finding of probable cause. Cannon alleges that unnamed defendants unlawfully entered his premises without a valid arrest warrant. (*Id.* at 49-50.)

**Count 6, False Imprisonment.** Count 6 is a § 1983 claim, related to Counts 4 and 5, against Wilmington Police Department and Judge Cooch. The complaint alleges that on January 9, 2010, an "unknown J. P. Commissioner unlawfully issued an arrest warrant for the

---

[5]Delaware law require sex offenders who have been released, discharged or paroled from any level IV or V facility to register as a sex offender. 11 Del. C. § 4120. Section 4120(g) requires a registered sex offender to periodically verify that the offender continues to reside at the address provided at the time of registration. *Id.* at § 4120(g).

Wilmington Police Department to imprison Cannon for failing to verify his identity and address" at the Delaware State Police headquarters. Cannon alleges that he was forced to take a "plea offer" by unnamed defendants for one year at level 2 supervision probation or face two years imprisonment at level 5 if convicted at trial. In addition, he alleges that his failure to continue to contract with unnamed defendants did not authorize Judge Cooch to imprison him at the Howard R. Young Correctional Institution ("HYRCI") in Wilmington, Delaware, for twelve days and that Judge Cooch "unlawfully" and "illegally" suspended the entire sentence and failed to give credit towards Cannon's sentence for his twelve days of imprisonment at the HRYCI. (*Id.* at 57-58.)

**Count 7, Advertent Negligence.** Count 7 appears to based upon Delaware law, is raised against the Wilmington Police Department, New Journal and Radio 1450, and is similar and/or related to Counts 1, 2, 3, and 5. Cannon alleges that he was unlawfully arrested on January 9, 2010 by the Wilmington Police Department for civil contempt for failing to verify his registration information at Delaware State Police headquarters. He alleges that the News Journal and Radio 1450 were "advertently negligent" for failing to verify the information about him, as set forth in Count 1, pertaining to December 4, 1998 court records. This placed Cannon's good-standing and reputation in a false light. (*Id.* at 65-66.)

**Count 8, Invidious Discrimination.** Count 8 alleges that discrimination occurred on January 9, 2010, when the Wilmington Police Department, New Journal, and Radio 1450 placed Cannon's photograph and verbal/written statements in the newspaper and radio. The complaint alleges that the actions placed Cannon's "property (body) in a 'suspected class' group of people in the universe - so called 'sex offenders'" without proof that he had committed wrongdoing.

6

**Count 9, Reckless Indifference**. Count 9 is similar to Count 2 and is raised against the Wilmington Police Department, New Journal, and Radio 1450. Cannon alleges that the foregoing defendants placed the information at issue, as discussed in Count 1, with reckless indifference when they failed to investigate the matter. (*Id.* at 78-80.)

**Count 10, Malicious Prosecution.** Count 10 is a § 1983 claim against Judge Cooch and Biden. Cannon alleges that Judge Cooch and Biden unlawfully and maliciously prosecuted him for the "crime of civil contempt for failing to continue contract with defendants." Judge Cooch entered an order for Cannon "to donate his property" (the court interprets this as verifying his registry information) at the Delaware State Policy headquarters, four times per year, pursuant to the Delaware sex offender legislation, 11 Del. C. § 4120. Cannon alleges that he was forced through threat, coercion, and duress of imprisonment, to donate his personal services without just compensation under an unconstitutional statute (apparently for the twelve days he was confined at the HYRCI). Cannon alleges that he was denied the right to face his accusers, counsel, a proper hearing, the right to present evidence, and that the defendants failed to inform him of the nature and cause of the accusations against him. (*Id.* at 87-91.)

**Count 11, Electronic Surveillance.** Count 11, against Markell and the GPS Provider, appears to be a § 1983 claim. Cannon was ordered to report to the Probation/Parole Office on January 25, 2010 to register for one year of probation at level 2 supervision. He was told that Markell had signed a bill that required electronic monitoring of Tier III sex offenders placed on probation. Cannon alleges that he was forced, through coercion, duress, and threat of imprisonment, to contract with unnamed defendants who authorized an unknown GPS Provider to monitor his location, and body movements, without first obtaining a court order indicating that

7

Cannon is a threat to national/local security. Finally, he alleges that between January 25, 2010 and July 2010, an electronic monitor was unlawfully placed in his residence, without a court order. (*Id.* at 98-100.)

**Count 12, Abuse of Process.** Count 12 is raised against unnamed State defendants and the Wilmington Police Department. It alleges that the charge against Cannon for failing to register his name and address was initiated by the Delaware State Police and enforced by the Wilmington Police Department safe streets division that monitors sex offenders. Cannon alleges that the defendants committed an abuse of process by instituting a fraudulent criminal proceeding against him on January 21, 2010, and that they used the matter to collect an unlawful/illegal debt to contract his personal services as a sex-offender without just compensation (it is unclear what is meant by this), all in violation of his right to be free from unlawful search and seizure. (*Id.* at 105-107.)

**Count 13, Breach of Loyalty.** Count 13 refers to the Wilmington Police Department, Biden, and Judge Cooch. Cannon alleges that following issuance and execution of the arrest warrant, Biden and Judge Cooch failed to seal the records at the Superior Court in reference to the charges and claims against him being nollei prosequi/dismissed.[6] Cannon alleges that Biden and Judge Cooch unlawfully traded false claims with the Wilmington Police Department, the News Journal, and Radio 1450 to benefit unnamed State defendants who released information and invited the public to provide information regarding Cannon's whereabouts. Cannon alleges that, in doing so, Biden and Judge Cooch breached their duties to him and to the public at large.

---

[6]It is unclear what court record Cannon asserts should be sealed; the 1998 court file for his criminal conviction or the 2010 court file for failure to provide adequate verification of registry information.

8

He further alleges that they "breached their loyalty to promise to discharge their duties" by failing to seal the court records. (*Id.* at 114-116.)

## III. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Cannon proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke v. Williams*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before

9

dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the court must grant Cannon leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Cannon has a "plausible claim for relief." *Id.* at 211. In other words, the complaint must do more than allege Cannon's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-pleaded facts do not

10

permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

### A. Eleventh Amendment Immunity

The complaint names as a defendant the State of Delaware. The claims against the State of Delaware are barred by the State's Eleventh Amendment immunity. *See MCI Telecom. Corp. v. Bell Atl. of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). To the extent that Cannon attempts to raise claims against the Delaware State Police, it too, is immune from suit.

The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State, and in the absence of congressional abrogation or consent, a suit against a state agency is proscribed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100. Further, a state agency, such as the Delaware State Police, "is not a person" subject to claims under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The State of Delaware and its state agency, the Delaware State Police, are immune from suit. Therefore, they will be dismissed as defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. Judicial Immunity

The complaint raises several claims against Judge Cooch. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial

11

acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009)
(quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)).  "A judge will not be deprived of
immunity because the action he took was in error, was done maliciously, or was in excess of his
authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all
jurisdiction.'" *Id.* (citations omitted)

Here, Cannon's claims, for the most part, refer to actions taken by Judge Cooch in his
judicial capacity, with no allegations that Judge Cooch acted outside the scope of his judicial
capacity, or in the absence of his jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  The
remaining allegations, including that Judge Cooch released information of public record, are
conclusory and lack supporting facts.

Judge Cooch is immune from suit for monetary liability under 42 U.S.C. § 1983.
Moreover, all claims against him an lack arguable basis in law or in fact.  Therefore the court
will dismiss as frivolous all claims against Judge Cooch pursuant to 28 U.S.C. § 1915(e)(2)(B).

### C. Executive Immunity

Markell is named as a defendant based upon Cannon's claim that the governor signed a
bill that requires electronic monitoring of Tier III sex offenders who are on probation.  As
discussed above, the Eleventh Amendment proscribes any suit against a state, or against a state
agency or department or state official where "the state is the real, substantial party in interest,"
unless the state consents to suit. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-101; *see MCI
Telecom. Corp.*, 271 F3d at 503 (states are generally immune from private suits in federal court),

In addition, individual members of state legislatures are absolutely immune from suit for
damages under 42 U.S.C. § 1983 when conducting legitimate legislative activity. *Tenney v.*

12

*Brandhove*, 341 U.S. 367, 376-79 (1951). Immunity extends to state executive branch officials, such as the governor, when they perform a legislative function. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1988). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Any activity that is in the sphere of legitimate legislative activity is a legislative act. *Id.* An executive function that is an integral step in the legislative process will usually be considered a legislative act. *Bogan*, 523 U.S. at 55. *See also*, *Smiley v. Holm*, 285 U.S. 355, 372-373 (1932) (holding that the state legislature cannot enact a law without the participation of the state governor, where the state constitution gives the governor a role in the enactment process).

Markell is absolutely immune from suit for any alleged legislative action taken by him. The claim against Markell has no arguable basis in law or in fact. It is frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### D. Respondeat Superior

The complaint raises claims against Biden and Coupe, both of whom are supervisory officials.[7] The complaint alleges, in a conclusory manner, that Biden unlawfully and maliciously prosecuted Cannon, that he failed seal court records, and that he provided information to others that is of public record. Coupe is named as a defendant, but the complaint contains no direct allegations against him.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither

---

[7]While Cannon also raises claims against supervisory officials Szczerba and Baker, the claims are raised pursuant to Delaware law and are not claims raised pursuant to § 1983.

participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

"Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The

Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat

superior and, that in order to establish liability for deprivation of a constitutional right, a party

must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392

F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Iqbal*, 556 U.S. at 677-678); *Rode v.*

*Dellarciprete*, 845 F.2d at 1207).

     "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a §

1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory

liability' is a misnomer. Absent vicarious liability, each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus,

when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent

responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the

official's subordinates violated the Constitution, but that the official by virtue of his own conduct

and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010),

*cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal*, 556 U.S. at 677). The factors

necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

     Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory

liability," one under which supervisors can be liable if they "established and maintained a policy,

practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated - or at least narrowed the scope of - supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe Cnty. Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing

liability for the violation of a plaintiff's constitutional right.[8] *Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal,* 556 U.S. at 677-686; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

Cannon provides no specific facts how Biden or Coupe violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. The allegations in the  complaint do not satisfy the *Iqbal* pleading requirements. Accordingly, the court will dismiss as frivolous all claims against Biden and Coupe pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[8]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

### E. Municipal Liability

Cannon refers to actions taken by the Wilmington Police Department throughout the complaint. Initially the court notes that a municipal police department is not a "person," separate from the municipality subject to § 1983 liability. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006). In addition, a municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews,* 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)).

Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, there are no allegations of an existing policy or custom so well-settled so as to constitute law. Instead, Cannon makes bald assertions which do not allow the court to draw reasonable inferences that the Wilmington Police Department may be held liable pursuant to § 1983. Absent any allegation that a custom or policy established by the City of Wilmington directly caused harm to Cannon, his § 1983 claims cannot stand. Accordingly, the court will dismiss the § 1983 claims against the Wilmington Police Department pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).  Cannon, however, will be given leave to amend to the extent that he can adequately plead claims against individual members of the Wilmington Police Department.

### F. State Actors

The complaint names as defendants Sweeney, Radio 1450, GPS Provider, and the News Journal, none of whom are state actors.  To the extent that Cannon raises § 1983 claims against them, the claims fail.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  To act under "color of state law" a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49.  It is apparent that Sweeney, Radio 1450, GPS Provider, and the News Journal are not "clothed with the authority of state law." *See Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d. Cir. 2004).  In addition, Radio 1450, GPS Provider, and the News Journal are not "persons" within the meaning of § 1983.  *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

Cannon's § 1983 claims against Sweeney, Radio 1450, GPS Provider, and the News Journal have no arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### G. Frivolous Claims

Cannon raises claims under criminal statutes. To the extent that Cannon seeks to impose criminal liability upon the defendants pursuant to the criminal statutes upon which he relies, he lacks standing to proceed. *See Allen v. Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. 2008) (not published); *see United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."). The decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979).

In addition, Count 13 alleges that the Wilmington Police Department, Biden, and Judge Cooch "breached their loyalty to promise to discharge their duties" when they failed to seal court records. The court finds the claim frivolous.

For the above reasons, the court will dismiss the foregoing claims as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B).

### H. Discrimination

Cannon alleges that the publication of the newspaper article and his photograph placed him in the suspect class of sex offenders without proof that he had committed wrongdoing. Cannon omits the fact that he is on the Delaware Sex Offender Central Registry listed as a high risk sex offender. *See* https://desexoffender.dsp.delaware.gov/SexOffenderPublic.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Under that provision, "persons who are similarly situated should be treated in the same manner." *Tillman v.*

*Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Even if sex offenders were a

protected class, Cannon fails to allege the existence of similarly situated persons who were

treated differently than plaintiff. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.

2006) (noting minimum requirements for "class of one" theory in equal protection context

require allegation that others similarly situated were treated differently). Cannon's equal

protection claim fails as a matter of law. *See id.*; *see also Tillman*, 221 F.3d at 424 ("When there

is no discrimination, there is no equal protection violation.").

### I. Issuance of Warrant/False Arrest/False Imprisonment

Cannon alleges that a warrant issued for his arrest without probable cause, resulting in his

false arrest and imprisonment. To succeed on such claims, Cannon must establish that probable

cause was lacking for his arrest and related detention. *See Groman v. Township of Manalapan*,

47 F.3d 628, 634-36 (3d Cir. 1995). The Fourth Amendment recognizes "the right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

Probable cause exists when the circumstances are "sufficient to warrant a prudent man in

believing that the defendant had committed or was committing an offense." *Gerstein v. Pugh*,

420 U.S. 103, 111 (1975) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91. "Probable cause . . .

does not require that the officer have evidence to prove guilt beyond a reasonable doubt."

*Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). It "exists if there is a fair

probability that the person committed the crime at issue," *see also Wilson v. Russo*, 212 F.3d 781,

789 (3d Cir. 2000) (quotations omitted), and "does not depend on whether the suspect actually

committed any crime." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

The complaint alleges that the warrant issued because Cannon failed to verify his identity and address as is required for sex offenders. Rather than allege a lack of probable cause, the facts indicate that probable cause existed for issuance of the warrant, which resulted in Cannon's arrest and detention. Probable cause precludes the false arrest and false imprisonment claims. *See White v. Brown*, 408 F. App'x 595 (3d Cir. 2010). However, because Cannon may be able to assert facts that demonstrate the absence of probable cause prior to his arrest, Counts 4, 5, and 6 will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Cannon will be given leave to amend these claims.

### J. Malicious Prosecution

Count 10 alleges that Judge Cooch and Biden engaged in malicious prosecution. As discussed above, Judge Cooch is immune from suit and it appears that Biden is named as a defendant based upon his supervisory position.

"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

It appears, but is not clear, that Cannon may have entered in an agreement with the prosecution for dismissal of the § 4120 charges. If dismissal of the charges resulted from an agreement with the prosecution, and not Cannon's innocence, he cannot establish favorable termination for purposes of a § 1983 action for malicious prosecution. *See Donahue v. Gavin*,

21

280 F.3d 371, 383 (3d Cir. 2002) (a grant of nolle prosequi that does not establish actual innocence cannot be used as a basis for establishing malicious prosecution).

The complaint as it now stands fails to allege the elements of malicious prosecution. However, since it appears plausible that Cannon may be able to articulate a claim against alternative defendants, he will be given an opportunity to amend his pleading. *See O'Dell v. United States Gov't*; 256 F. App'x 444 (3d Cir. 2007) (not published) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

### K. Abuse of Process

In addition to the malicious prosecution claim, the complaint raises an abuse of process claim in Count 12. "In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010) (internal quotation marks omitted). If the initial filing of criminal charges and Cannon's arrest were improper, then the appropriate claim would be malicious prosecution, not abuse of process. *Id.* at 582-83.

The complaint alleges that the filing of criminal charges and arrest were improper. Accordingly the abuse of process claim fails as a matter of law and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### L. Habeas Corpus

To the extent that Cannon attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas

corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Torrence v. Thompson,* 435 F. App'x 56 (3d Cir. 2011) (not published). Furthermore, a plaintiff cannot recover under § 1983 for alleged wrongful incarceration unless he proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Here, Cannon has not alleged or proven that his conviction or sentence was reversed or invalidated as provided by *Heck*. Therefore, to the extent Cannon seeks damages for his term of probation or sex registry requirement, his claim rests on an "inarguable legal conclusion" and is frivolous. *Neitzke*, 490 U.S. at 326. For the above reasons, the court will dismiss the claim as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B).

### M. Supplemental State Claims

Cannon has alleged, what appear at this time, to be cognizable state claims. As discussed above, the court will dismiss all federal claims, but will give Cannon leave to amend certain dismissed claims. At this juncture, the court retains jurisdiction over the supplemental state claims. *See* 28 U.S.C. § 1367.

## V. CONCLUSION

For the above reasons the court will dismiss all claims against the State of Delaware, the Delaware State Police, Richard R. Cooch, Joseph R. Biden, III, and Robert Coupe, as well as Counts 4, 5, 6, 8, 10, 11, 12, and 13 as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The court concludes that amendment of Counts 8, 11, 12, and 13 would be futile. Cannon will be given leave to amend Counts 4, 5, 6, and 10. Cannon has alleged what

appear to be cognizable Delaware claims in Counts 1, 2, 3, 7, and 9.  If an amended complaint is

not filed within the time set forth by the court, then the court will decline to exercise

supplemental jurisdiction and the case will be dismissed.

     An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

May 8, 2012

Wilmington, Delaware

24